RENDERED:  DECEMBER 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0826-MR

ROBERT HILL AND
KAREN HILL                                                                                APPELLANTS


APPEAL FROM CHRISTIAN CIRCUIT COURT
v.             HONORABLE ANDREW C. SELF, JUDGE
ACTION NO. 16-CI-00297


CHRISTIAN COUNTY
QUAIL CLUB, INC.                                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE:  Robert and Karen Hill appeal from the entry of summary

judgment on their claims against appellee Christian County Quail Club, Inc.   The

circuit court concluded that the precise claims alleged in this action had been

previously decided against the Hills by jury verdict in a 2014 action and are thus

barred by the doctrines of *res judicata* and collateral estoppel.  Finding no error in the circuit court's analysis, we affirm its summary dismissal of the complaint in this case.

The facts are neither complex nor in dispute.  The Christian County Quail Club purchased property on Quail Club Road in October 1964.  The Quail Club Road property has been continuously used by members of the Club as a shotgun shooting range since before the purchase of the Club property.  In September 2000, the Hills purchased property adjoining the Club property and were aware of the Club's use of the property as a skeet shooting range at that time.

However, in April 2010, the Hills filed an action in Christian Circuit Court alleging that lead shot and/or lead dust was entering their property due to the Club's operation of the shooting range.  The Hills sought damages for personal injury, nuisance, and diminution in property value due to trespass, as well as claiming entitlement to punitive damages and an injunction prohibiting Club activities.  A jury trial conducted in January 2014 resulted in a verdict in favor of the Club on the Hills' claims for personal injury and nuisance and in the Hills' favor on their claim of trespass, but the jury rejected their claim for actual damages amounting to $40,000 stemming from an alleged diminution of the value of their property.  Instead, the jury awarded only nominal damages in the amount of $1,200

for the trespass from shot pellets landing on their property. The Club thereafter satisfied the judgment.

Subsequent to the 2014 verdict and consistent with recommendations of its expert in that litigation, the Club altered the orientation and operation of the skeet trap nearest the Hills' property changing the shooting position so that shot from shooters on Trap 1 would land farther away from the line between the two properties. It also erected a ten-foot-tall fence between the properties. Nevertheless, in March 2016, the Hills filed the instant action against the Club alleging a continuing trespass of shot pellets on their property, seeking damages for physical damage to the property, loss of use and enjoyment, and diminution in value of the property, as well as punitive damages. They also sought a permanent injunction compelling the Club to cease and desist from operation of the shooting club.

After filing its response to the complaint and a period of discovery, the Club moved for summary judgment on the basis that the Hills' claims in this action were barred by the doctrines of *res judicata* and collateral estoppel. In response, the Hills argued that summary judgment was inappropriate because shot pellets continue to fall on their property. They thus argued that what was once an innocent trespass had become an intentional trespass for which they are entitled to a jury award of both nominal and actual damages. The circuit court heard

argument of counsel prior to granting the Club's motion. In entering summary

judgment on the Hills' claims, the circuit court stated that it had reviewed the

"prior claims, evidence and arguments presented to a jury on January 30, 2014 in

*Karen Hill and Robert John Hill v. Christian County Quail Club*,"[1] and had

considered caselaw on the principles of *res judicata* and collateral estoppel prior to

concluding:

> The issues of this case were previously presented
> to a jury on January 30, 2014. The jury found in favor of
> the defendant on the issues of nuisance and personal
> injury. While the jury found for the plaintiff on the issue
> of trespass, the jury concluded that trespass did not cause
> actual damages.
>
> Consequently, the [c]ourt is of the opinion that the
> legal princip[le]s of both res judicata and collateral
> estoppel require the [c]ourt to enter Summary Judgment
> in favor of the defendant.

This appeal followed.

As an initial matter, we cite our Supreme Court's reiteration of the

well-settled rules regarding entry of summary judgment:

> We must first begin by reviewing the standards to be
> used when handling summary judgment. Summary
> judgment is to be "cautiously applied and should not be
> used as a substitute for trial." Granting a motion for
> summary judgment is an extraordinary remedy and
> should only be used "to terminate litigation when, as a
> matter of law, it appears that it would be impossible for
> the respondent to produce evidence at the trial warranting

---

[1] Christian Circuit Court Action No. 10-CI-00592.

a judgment in his favor and against the movant." The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted). The Supreme Court also emphasized that the term "impossible" is to be used in a practical, not an absolute, sense. *Id.* In this case, the facts must be viewed in a light most favorable to the Hills. Finally, appellate review of a motion for summary judgment involves only questions of law and "a determination of whether a disputed material issue of fact exists." *Id.* Therefore, our review is *de novo* with no need to defer to the circuit court's decision. *Id.*

We next turn to an examination of the legal principles upon which the Club's entitlement to summary disposition is predicated – the doctrines of *res judicata* and collateral estoppel. The decision of the Kentucky Supreme Court in *Yeoman v. Commonwealth, Health Policy Board*, offers a clear and thorough explanation of the purpose and proper application of *res judicata*, an affirmative defense which operates to bar repetitious suits involving the same cause of action:

The doctrine of *res judicata* is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action.

> The issues in the former and latter actions must be identical. **The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts**. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.

983 S.W.2d 459, 464-65 (Ky. 1998) (emphasis added) (citations and footnote omitted).

The *Yeoman* Court emphasized that certain elements must be present for claim preclusion to operate as a bar to further litigation. Citing *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970), the Supreme Court reiterated the requirements of: 1) identity of the parties; 2) identity of the causes of action; and 3) that the action must have been resolved on the merits. Concerning the first element, there is no question but that the parties are identical. In order to apply elements two and three, we must compare the claims presented to and decided by the jury in the 2014 judgment and the claims advanced in the instant proceeding.

Although the record is rather sparse concerning the proceedings which culminated in the 2014 jury verdict, the instructions and the judgment based upon the jury verdict inform our review. In pertinent part, the 2014 jury was instructed as follows:

INSTRUCTION NO. 3 TRESSPASS [sic]

1.  You will find for the Hills and against the Quail Club, if, and only if, you are satisfied from the evidence that Quail Club allowed pieces or pellets from shotgun shells to land on the property of the Hills increasing the level of lead on the Hills' property without the Hills' consent. Otherwise, you will find for Quail Club.

2.  Consent as used in this Instruction, may be expressed or implied from the circumstances or conduct of either Karen Hill or Robert John Hill.


INSTRUCTION NO. 4

Having found for the Hills under Instruction No. 3, you will determine from the evidence and award them the difference between the fair market value of the Hills' entire property immediately before and immediately after the property was damaged, excluding the noise and dust generated from the lead removal in July, 2010, unless you find the amount to be zero ($0.00), in which case you will award the Plaintiffs Karen Hill and Robert John Hill under Instruction No. 5;

"Fair market value" is the price that a person who is willing, but not compelled to buy, would pay a seller who is willing, but not forced to sell, would accept for the property in question.

INSTRUCTION NO. 5

Having found for the Hills, but if, and only if, you do not award them a sum of damages under Instruction No.4, you will award nominal damages to the Hills.

"Nominal damages" are a trivial sum of money awarded to a litigant who has established a cause of

action but has not established that he or she is entitled to compensatory damages.

The jury was also instructed on a claim of nuisance and a personal injury claim predicated upon Karen Hill's allegation that she had been struck by a shot pellet in her yard. Although the jury found in favor of the Club on both claims, no similar claims were alleged in the 2016 proceeding.

As set out in the February 27, 2014 trial order and judgment, the jury found in favor of the Hills on their trespass claim but found no compensable damages. Instead, the jury awarded the Hills the sum of $1,200 in nominal damages, "a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he or she is entitled to compensatory damages." The Hills' arguments in this appeal focus solely upon the summary disposition of their trespass claim.

First, the Hills insist that the trespass in this case is continuing and state that "[w]hile a jury may have believed the [Club] was merely negligent during the first trial and only awarded nominal damages based on this belief, the [Hills] can now show that the Quail Club continues to trespass with no regard for the [Hills'] use or enjoyment of their property." We view this to be a distinction without a difference.

The distinction between intentional and negligent trespass was explored by the Supreme Court in *Smith v. Carbide & Chemicals Corporation*:

*Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66 (Ky. 2000), provided this Court with an opportunity to revisit the law of trespass to real property. The jury found the trespass was intentional. Although the case focused on the proper damages for trespass, the Court reaffirmed the traditional law of trespass, "even if the plaintiff suffered no actual damages as a result of the trespass, the plaintiff is entitled to nominal damages." *Id.* at 71. **However, in intentional trespass, in order to recover more than nominal damages, a property owner must prove "actual injury**," which we shall discuss further below.

226 S.W.3d 52, 55 (Ky. 2007) (emphasis added). Thus, the mere fact that a trespasser's conduct can be labeled intentional does not relieve a claimant from the duty to prove actual injury. The record in this case discloses that the Hills' current claims against the Club are based upon conduct and alleged injury which do not differ in any significant respect from that alleged in their previous litigation against the Club. In fact, the only significant difference in the Club's activities with respect to the Hills' property is the fact that it attempted to ameliorate the situation by erecting a fence between the parties' properties and re-orienting the skeet trap nearest the Hills' property in an attempt to prevent pellets from falling on their land.

Because the Hills allege no conduct or injury distinct from that alleged in the previous litigation, the doctrine of *res judicata* operates to bar the instant litigation. In this regard, we find persuasive the rationale of this Court in

*Rockwell International Corp. v. Wilhite* regarding the necessity of demonstrating

actual damages:

> Although the landowners have established that Rockwell negligently trespassed on their properties when it allowed PCBs originating at its Russellville plant to flow into a stream and thus be deposited as a result of flooding on their properties, and although PCBs are a known carcinogen, the landowners have nevertheless failed to establish that their properties have suffered any injury as a consequence of the trespass. No persons who have come upon the land have been harmed, no farm animals or pets have been sickened, nor have any crops been lost. The land and the buildings thereon continue to be used as they were before the presence of PCBs was discovered. Thus, the landowners cannot recover damages under a negligent trespass theory.

143 S.W.3d 604, 625 (Ky. App. 2003). Neither in the instant claims nor in the

previous litigation did the Hills offer any evidence as to *injury* to their property.

As the Club notes in its brief, a shooting experiment was conducted in the current

litigation in which five very small pellets landed on the Hills' property after more

than 300,000 had been shot. During this experiment, five people, including

representatives of the Hills, stood in the area where the five small pellets fell and

none seemed concerned about potential injury. Thus, returning to the *Rockwell*

analysis, it appears that "[a]ny annoyance or interference sustained by the [Hills]

here is the result of an irrational fear of [the small pellets]. The law does not allow

relief on the basis of an unsubstantiated phobia." *Id*. at 627.

Because neither the Club's use of its property, nor the Hills' evidence as to the use of their property, differs from the claims submitted to a jury in 2014, the Christian Circuit Court did not err in concluding the instant claims are barred by the doctrine of *res judicata*. We therefore affirm its entry of summary judgment in this case.

ALL CONCUR.

BRIEF FOR APPELLANT:

Stephanie Ritchie Mize
Clarksville, Tennessee

BRIEF FOR APPELLEE:

Edwin A. Jones
W. Lucas McCall
Paducah, Kentucky